**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

F I L E D

2007 NOV -8  A 11: 47

U.S. DISTRICT COURT

UNITED STATES OF AMERICA
          Plaintiff,


          v.                    Criminal Case No. 3:00 CR 058 (AHN)


DAMON IVANHOE GRAHAM
          Defendant,              /
_____/


## MOTION FOR MODIFICATION OF AN IMPOSED TERM OF IMPRISONMENT

NOW COMES Damon Ivanhoe Graham (Hereinafter "Defendant"),
proceeding pro se, and moves the Honorable Court pursuant to 18
U.S.C § 3582(c)(2), to modify the term of imprisonment imposed in
the above entitled case. As reason therefore, Defendant says as
follows:

Title 18, Section 3582 states in pertinent part:

> (c) The court may not modify a term of imprisonment
> once it has been imposed except that—

> (2) in the case of a defendant who has been
> sentenced to a term of imprisonment based on
> a sentencing range that has subsequently been
> lowered by the Sentencing Commission pursuant
> to 28 U.S.C § 994(o), upon motion of the
> defendant...the court may reduce the term of
> imprisonment...if such a reduction is consistent
> with applicable policy statements issued by
> the Sentencing Commission.

On November 1, 2007, the United States Sentencing Commission
effected an amendment to the Drug Quantity Table § 2D1.1(c). Item
number 9 of the amendments reduced the base offense level for
cocaine base offenses by two levels. See Exhibit 1 (Amendments).

(1)

FACTUAL BACKGROUND:

On March 23, 2000, Defendant was named in a One Count Indictment. He was charged with conspiracy to possess with intent to distribute cocaine base in violation of 21 U.S.C § 846.

On March 31, 2000, Defendant entered a plea of not guilty to the charge.

On July 7, 2000, Defendant submitted a change of plea based upon a plea agreement. A presentence investigation was conducted by United States Probation Officer Ray Lopez.

Probation Officer Lopez reviewed the Indictment, plea agreement, police reports, laboratory analysis report, and Defendant's Rule 11 plea colloquy. The Presentence Report (PSR) determined that the total amount of drugs charged in Count One of the Indictment were 5 grams of cocaine base. See Exhibit 2 (PSR).

Based on the plea agreement and Indictment, Defendant's violation of 21 U.S.C § 846 called for a base offense level of twenty-six for cases involving at least 5 but less that 20 grams of cocaine base. U.S.S.G § 2D1.1(c)(7)(2000 Sentencing Manual).

Subsequently, Probation Officer Lopez requested that the Defendant receive a number of sentencing enhancements. The PSR recommended your Defendant's base offense level to be raised by 2 levels for possession of a firearm under § 2D1.1(b)(1); 2 level adjustment for role in the offense under § 3B1.4; and 2 levels for obstruction of justice under § 3C1.1.

Based on the Probation Officer's report and recommendation, Defendant's base offense level yield at 32.

The Court adopted the finding and recommendation set forth
in the presentence investigation report. The Court further awarded
a 3 level reduction for acceptance of responsibility and concluded
that Defendant's total offense level applicable is level 29 with a
criminal history category of three. See Exhibit 3 (Sentencing HRG).

Defendant was sentenced to a term of 120 months for conspiracy
to possess with intent to distribute cocaine base.

ARGUMENT:

Defendant's sentence should be modified by the Honorable Court
and reduced by two-levels in compliance with the United States
Sentencing Commission's November 1, 2007, amendments to § 2D1.1(c).

In the immediate case, Defendant plead guilty and was convicted
with conspiracy to possess with intent to distribute 5 grams of
cocaine base. Adhering to both the Indictment and plea agreement,
Defendant's base offense level is 26, with a statutory mandatory
minimum sentence of 5 years. See 21 U.S.C § 841.

In accordance with the United States Sentencing Commission's
amendment to § 2D1.1(c), Defendant's base offense level of 26, for
criminal cases involving 5 grams of cocaine base, is now assigned
a base offense level of 24.

In sum, Defendant's base offense level should be reassigned
to level 24, and he should receive a sentence between the 63-78
month guideline range. The sentence may be adjusted by 2 levels
for Defendant's role in offense; 2 levels for possession of a
firearm; and 2 levels for obstruction of justice. Defendant's
base offense level will yield at 30. Your Defendant's BOL will

(3)

be reduced by 3 levels for his prompt acceptance of responsibility and will conclude at level 27 with a criminal history category of three. Defendant should be sentence between 87-108 months.

## CONCLUSION

**Wherefore,** for the foregoing reasons, Defendant respectfully moves this Honorable Court to modify his sentence, and provide any other relief this Court feels is necessary.

Respectfully submitted,

Dated: 11-5-07

Damon Ivanhoe Graham
FMC-Devens, Unit H-A
P.O. Box 879
Ayer, Massachusetts 01432

As to the foregoing, Defendant swears the facts herein are true and correct to the best of his knowledge and belief under the penalty of perjury, per 28 U.S.C § 1746.

Date: 11-05-07

## CERTIFICATE OF SERVICE

I, Damon Ivanhoe Graham, hereby certify that a true copy of the foregoing **MOTION TO MODIFY SENTENCE** has on this date been served upon Anthony E. Kaplan, A.U.S.A, by depositing a copy in the U.S. mails, postage prepaid, addressed as follows:

Anthony E. Kaplan, A.U.S.A

United States Attorney's Office

157 Church Street

New Haven, Connecticut 06510

Dated: 11-5-07

# EXHIBIT

*1*

increase... life of someone other than a minor or an incompetent... another tier provided the offense

level increase and a minimum offense level of 30 for the substantial risk of harm to the life of a minor or incompetent or the environment.

The Commission determined that distributing, or possessing with the intent to distribute, methamphetamine on a premises where a minor is present or resides presents a greater harm than discharging a hazardous substance into the environment, but is a lesser harm than the substantial risk of harm to adults or to the environment created by the manufacture of methamphetamine. Therefore, the amendment adds a new tier to the enhancement in the new subdivision (b)(10)(B) in order to account for this conduct. A defendant convicted under 21 U.S.C. § 860a for distributing, or possessing with the intent to distribute, methamphetamine on a premises where a minor is present or resides will receive a two-level enhancement, with a minimum offense level of 14.

To address the overlap of conduct covered by the enhancement for the substantial risk of harm to the life of a minor and the new offense of manufacturing, or possessing with the intent to manufacture, methamphetamine on a premises where a minor is present or resides, a three-level enhancement and a minimum offense level of level 27 will apply in a case in which a minor is present, but in which the offense did not create a substantial risk of harm to the life of a minor. In any methamphetamine manufacturing offense which creates a substantial risk of harm to the life of a minor, a six-level enhancement and a minimum offense level of level 30 will apply.

Sixth, the amendment updates Appendix A (Statutory Index) to include references to the new offenses created by the PATRIOT Reauthorization and Adam Walsh Acts.

Item 9 of the amendments provides:

Section 2D1.1(c)(1) is amended by striking ''1.5 KG or more of Cocaine Base'' and inserting ''4.5 KG or more of Cocaine Base''.

Section 2D1.1(c)(2) is amended by striking ''At least 500 G but less than 1.5 KG of Cocaine Base'' and inserting ''At least 1.5 KG but less than 4.5 KG of Cocaine Base''.

Section 2D1.1(c)(3) is amended by striking ''At least 150 G but less than 500 G of Cocaine Base'' and inserting ''At least 500 G but less than 1.5 KG of Cocaine Base''.

Section 2D1.1(c)(4) is amended by striking ''At least 50 G but less than 150 G of Cocaine Base'' and inserting ''At least 150 G but less than 500 G of Cocaine Base''.

Section 2D1.1(c)(5) is amended by striking ''At least 35 G but less than 50 G of Cocaine Base'' and inserting ''At least 50 G but less than 150 G of Cocaine Base''.

Section 2D1.1(c)(6) is amended by striking ''At least 20 G but less than 35 G of Cocaine Base'' and inserting ''At least 35 G but less than 50 G of Cocaine Base''.

Section 2D1.1(c)(7) is amended by striking ''At least 5 G but less than 20 G of Cocaine Base'' and inserting ''At least 20 G but less than 35 G of Cocaine Base''.

Section 2D1.1(c)(8) is amended by striking ''At least 4 G but less than 5 G of Cocaine Base'' and inserting ''At least 5 G but less than 20 G of Cocaine Base''.

Section 2D1.1(c)(9) is amended by striking ''At least 3 G but less than 4 G of Cocaine Base'' and inserting ''At least 4 G but less than 5 G of Cocaine Base''.

Section 2D1.1(c)(10) is amended by striking ''At least 2 G but less than 3 G of Cocaine Base'' and inserting ''At least 3 G but less than 4 G of Cocaine Base''.

Section 2D1.1(c)(11) is amended by striking ''At least 1 G but less than 2 G of Cocaine Base'' and inserting ''At least 2 G but less than 3 G of Cocaine Base''.

Section 2D1.1(c)(12) is amended by striking ''At least 500 MG but less than 1 G of Cocaine Base'' and inserting ''At least 1 G but less than 2 G of Cocaine Base''.

Section 2D1.1(c)(13) is amended by striking ''At least 250 MG but less than 500 MG of Cocaine Base'' and inserting ''At least 500 MG but less than 1 G of Cocaine Base''.

Section 2D1.1(c)(14) is amended by striking ''Less than 250 MG of Cocaine Base'' and inserting ''Less than 500 MG of Cocaine Base''.

The Commentary to § 2D1.1 captioned ''Application Notes'' is amended in Note 10 in the first paragraph by inserting before ''The Commission has used the sentences'' the following :

''Use of Drug Equivalency Tables.



# SENTENCING TABLE
(IN MONTHS OF IMPRISONMENT)

CRIMINAL HISTORY CATEGORY (CRIMINAL HISTORY POINTS)

| OFFENSE LEVEL | I (0 or 1) | II (2 or 3) | III (4,5,6) | IV (7,8,9) | V (10,11,12) | VI (13 or More) |
|---|---|---|---|---|---|---|
| 1 | 0-6 | 0-6 | 0-6 | 0-6 | 0-6 | 0-6 |
| 2 | 0-6 | 0-6 | 0-6 | 0-6 | 0-6 | |
| 3 | 0-6 | 0-6 | 0-6 | 0-6 | | |
| 4 | 0-6 | 0-6 | 0-6 | | | 9-15 |
| 5 | 0-6 | 0-6 | | | 9-15 | 12-18 |
| 6 | 0-6 | 0-6 | | 8-14 | 12-18 | 15-21 |
| 7 | 0-6 | 0-6 | | 10-16 | 15-21 | 18-24 |
| 8 (Zone A) | 0-6 | | 8-14 | 12-18 | 18-24 | 21-27 |
| 9 | | 8-14 | 10-16 | 15-21 | 21-27 | 24-30 |
| 10 | | | | 18-24 | 24-30 | 27-33 |
| 11 | 8-14 | 10-16 | 12-18 | 18-24 | 24-30 | 27-33 |
| 12 (Zone C) | 10-16 | 12-18 | 15-21 | 21-27 | 27-33 | 30-37 |
| 13 | 12-18 | 15-21 | 18-24 | 24-30 | 30-37 | 33-41 |
| 14 | 15-21 | 18-24 | 21-27 | 27-33 | 33-41 | 37-46 |
| 15 | 18-24 | 21-27 | 24-30 | 30-37 | 37-46 | 41-51 |
| 16 | 21-27 | 24-30 | 27-33 | 33-41 | 41-51 | 46-57 |
| 17 | 24-30 | 27-33 | 30-37 | 37-46 | 46-57 | 51-63 |
| 18 | 27-33 | 30-37 | 33-41 | 41-51 | 51-63 | 57-71 |
| 19 | 30-37 | 33-41 | 37-46 | 46-57 | 57-71 | 63-78 |
| 20 | 33-41 | 37-46 | 41-51 | 51-63 | 63-78 | 70-87 |
| 21 | 37-46 | 41-51 | 46-57 | 57-71 | 70-87 | 77-96 |
| 22 | 41-51 | 46-57 | 51-63 | 63-78 | 77-96 | 84-105 |
| 23 | 46-57 | 51-63 | 57-71 | 70-87 | 84-105 | 92-115 |
| 24 | 51-63 | 57-71 | 63-78 | 77-96 | 92-115 | 100-125 |
| 25 | 57-71 | 63-78 | 70-87 | 84-105 | 100-125 | 110-137 |
| 26 | 63-78 | 70-87 | 78-97 | 92-115 | 110-137 | 120-150 |
| 27 | 70-87 | 78-97 | 87-108 | 100-125 | 120-150 | 130-162 |
| 28 | 78-97 | 87-108 | 97-121 | 110-137 | 130-162 | 140-175 |
| 29 | 87-108 | 97-121 | 108-135 | 121-151 | 140-175 | 151-188 |
| 30 | 97-121 | 108-135 | 121-151 | 135-168 | 151-188 | 168-210 |
| 31 | 108-135 | 121-151 | 135-168 | 151-188 | 168-210 | 188-235 |
| 32 | 121-151 | 135-168 | 151-188 | 168-210 | 188-235 | 210-262 |
| 33 | 135-168 | 151-188 | 168-210 | 188-235 | 210-262 | 235-293 |
| 34 | 151-188 | 168-210 | 188-235 | 210-262 | 235-293 | 262-327 |
| 35 | 168-210 | 188-235 | 210-262 | 235-293 | 262-327 | 292-365 |
| 36 | 188-235 | 210-262 | 235-293 | 262-327 | 292-365 | 324-405 |
| 37 | 210-262 | 235-293 | 262-327 | 292-365 | 324-405 | 360-LIFE |
| 38 | 235-293 | 262-327 | 292-365 | 324-405 | 360-LIFE | 360-LIFE |
| 39 | 262-327 | 292-365 | 324-405 | 360-LIFE | 360-LIFE | 360-LIFE |
| 40 | 292-365 | 324-405 | 360-LIFE | 360-LIFE | 360-LIFE | 360-LIFE |
| 41 | 324-405 | 360-LIFE | 360-LIFE | 360-LIFE | 360-LIFE | 360-LIFE |
| 42 | 360-LIFE | 360-LIFE | 360-LIFE | 360-LIFE | 360-LIFE | 360-LIFE |
| 43 (Zone D) | LIFE | LIFE | LIFE | LIFE | LIFE | LIFE |

# EXHIBIT



## PART A.  THE OFFENSE

### Charge(s) and Conviction(s)

1.  The defendant, Damon Ivanhoe Graham, appeared in the United States District Court at Bridgeport, Connecticut, before the Honorable Holly Fitzsimmons, United States Magistrate Judge, on July 7, 2000. On that date, Magistrate Fitzsimmons accepted the defendant's guilty plea, on behalf of Senior United States District Judge Alan H. Nevas, to a single count indictment in Criminal Number 3:00CR00058(AHN), which charges Conspiracy to Possess With Intent to Distribute more than 5 grams of Cocaine Base, in violation of 21 U.S.C. § 846. Mr. Graham has been represented by retained counsel, John R. Williams.

2.  Sentencing has been scheduled for September 25, 2000, at 9:00 a.m. Mr. Graham has been serving a state sentence in the custody of the Connecticut Department of Corrections since March 16, 2000.

3.  Codefendant Vivian Rogers has pled guilty to a substitute information charging her with False Declarations Before a Grand Jury, in violation of 18 U.S.C. § 1623, and is scheduled for sentencing on September 22, 2000. In a related case, Cory James entered a guilty plea to count one of a two count indictment in Criminal number 3:99CR00204(DJS), which charges Possession With Intent to Distribute Cocaine, in violation of 21 U.S.C. § 841(a)(1). He has not been sentenced.

4.  In the plea agreement, which is attached to this report for the Court's review, the parties calculate the defendant's base offense level to be 26 pursuant to U.S.S.G. § 2D1.1(c)(7) because the defendant was involved in the sale of between 5 and 20 grams of cocaine base. The parties further stipulate that a 2 level increase applies pursuant to U.S.S.G. § 2D1.1(b)(1) because the defendant possessed a firearm, and that an additional 2 level increase applies pursuant to U.S.S.G. § 3D1.4, because the defendant used a person under the age of eighteen to commit the offense. The parties reserve the right to argue for and against a 2 level increase for the obstruction of justice in accordance with U.S.S.G. § 3C1.1. Additionally, the government agrees to recommend that the Court reduce the adjusted offense level by 3 levels pursuant to U.S.S.G. § 3E1.1 based upon the defendant's acceptance of responsibility.

### The Offense Conduct

5.  The following is based upon material from the government's file, including investigative reports, in addition to interviews with the defendant, the assistant U.S. attorney and the case agent.

6.  In February 1999, members of the New Haven Drug Gang Task Force began investigating a group of individuals that were selling crack cocaine and storing

2

assault type weapons in an apartment at 32 Blue Cliff Terrace, Apt. 257, New Haven, Connecticut. Information was developed that an individual, later identified as Cory James, was one of the leaders of the operation, and that he maintained the aforementioned arsenal to protect the proceeds of the crack operation.

7.     In May 1999, agents received information from a cooperating informant (CI), that an individual, later identified as Damon Graham, was selling crack cocaine throughout the Fair Haven section of New Haven. It was later discovered that Graham was conspiring with Cory James. The CI further related that Graham lived with his girlfriend, eventually identified as Vivian Rogers. The CI also advised that Graham usually sold "eight balls," 1/8 of an ounce quantities of crack cocaine, and that Graham used various rental cars, or his Mazda van to make deliveries.

8.     Subsequently, the CI provided agents with the license plate number of the defendant's van, 763-MJZ, and a white Buick rental car with a Maryland plate number, FGL-376, that Graham had been using. A license check revealed that the Mazda was registered to Graham's mother, Yvonne Moore, of 31 Atwater Street, New Haven, Connecticut, an address the defendant had used on prior contacts with the New Haven Police. An NCIC check also revealed that Graham had active arrest warrants charging him with Criminal Attempt to Commit Robbery in the First Degree, Carrying a Pistol Without a Permit, Conspiracy to Sell Narcotics, and Failure to Appear in the First Degree.

9.     Thereafter, during the week of May 7, 1999, agents conducted surveillance of 31 Atwater Street and observed Graham driving both of the aforementioned vehicles, traveling to and from 64 Chamberlain Street, Apt. 2, New Haven, Connecticut, and parking one or the other vehicle behind 80 Chamberlain Street, on a regular basis while conducting what appeared to be hand to hand drug transactions with numerous individuals. Subsequently, an agent checked the records of the United Illuminating Company, and discovered that the account for 64 Chamberlain Street was in the name of Vivian Rogers. Also during this week, the CI made a controlled purchase of crack cocaine from Graham.

10.     On June 2, 1999 officers executed a search and seizure warrant at 64 Chamberlain Street, the apartment shared by Damon Graham and Vivian Rogers. After forcing entry into the apartment, officers located Graham and Rogers in the master bedroom, along with their daughter, Nadayja Graham, who was two months old at the time, and Rogers' daughter, Priya Jones, who was five years old at the time.

11.     During the execution of the warrant, officers seized approximately $40,000 in cash located in a safe. Inside the safe, officers found trace amounts of cocaine. Near the safe, police seized a glass tube commonly used to convert powder cocaine into crack, which contained trace amounts of cocaine. On top of the safe, officers seized

3

a Smith & Wesson nine millimeter semi-automatic pistol, with a matching magazine (unloaded), and an owner's manual for a Desert Eagle .50 caliber pistol. In the master bedroom, officers recovered two beepers, two cellular phones, $1,950 in counterfeit currency, a bullet proof vest, and a black nylon pistol shoulder holster.

12.    At the time the warrant was executed, Graham was arrested on the aforementioned outstanding warrants. He was additionally arrested and charged with Criminal Possession of a Firearm, Forgery in the First Degree, and Risk of Injury to a Minor. Graham was arrested pursuant to a federal arrest warrant on February 15, 2000.

13.    Also at this time, Ms. Rogers provided the New Haven Police Department with a sworn statement attesting that approximately $38,000 of the $40,000 belonged to Damon Graham, and stated that she owned the remaining $2,000. Ms. Rogers further stated that Graham did not work, and she did not believe that he earned the money from working.

14.    Prior to posting bond, Graham was detained at the New Haven Community Correctional Center. While he was incarcerated, he made several telephone calls which were consensually recorded. On June 4, 1999, he called his sister, Rochelle Graham, and asked her to give Cory James a scale and approximately fourteen grams of crack cocaine. At the time this occurred, Rochelle Graham was a minor. The defendant knew and intended that the narcotics he asked Rochelle Graham to deliver to Cory James would be packaged and sold to customers.

15.    Additionally, on June 4, 1999, Graham engaged in two conversations with Vivian Rogers, in which he gave her telephone numbers of his narcotics customers, and asked her to give those numbers to Cory James. Again, his purpose was to have James continue the drug trafficking operation while Graham was in custody.

16.    On June 17, 1999, in the District of Connecticut, Ms. Rogers complied with a subpoena by testifying before a grand jury in New Haven while under oath. After she was served with this subpoena, Damon Graham and other members of his family, encouraged Rogers to give perjured testimony in response to questions relating to the $40,000 that was seized during the execution of the search and seizure warrant. Essentially, Graham encouraged Rogers to testify that the money was not the proceeds of drug trafficking.

17.    During her testimony, Rogers gave a contradictory statement from her original statement to police. She testified that only $4,000 belonged to Damon Graham. Specifically, she testified that the money recovered from the safe belonged to several individuals, including her daughter, her grandparents and others. At the time of her testimony, she knew that the entire $40,000 was drug proceeds belonging to Damon Graham and Cory James.

4

### Victim Impact

18. None.

### Adjustment for Obstruction of Justice

19. The defendant unlawfully influenced Vivian Rogers to commit perjury and therefore, it is believed that an increase for the obstruction of justice would be appropriate.

### Adjustment for Acceptance of Responsibility

20. On July 28, 2000, this officer interviewed the defendant, while in the presence of an attorney from the law offices of Williams and Pattis, appearing on behalf of Mr. Williams, at the United States Marshal's facility in New Haven , Connecticut. During this interview, the defendant admitted his involvement in a conspiracy to distribute crack cocaine. He expressed his remorse and stated that he didn't mean to involve anyone else, especially Vivian Rogers. The defendant also provided a letter addressed to the Court, in which he states his feelings about the offense, and his current predicament. This letter is attached to this report for the Court's review. Based solely on his statement of the offense, the defendant has demonstrated acceptance of responsibility for the offense of conviction. However, the guidelines state that an increase for the obstruction of justice ordinarily indicates that a defendant has not accepted responsibility, but there may be extraordinary cases in which both adjustments apply.

### Offense Level Computation

21. The guidelines amended May 1, 2000, have been used in this report because there are no identifiable ex post facto considerations. The following calculations are based upon the stipulations set forth in the plea agreement.

22. Base Offense Level: The guideline for a violation of 21 U.S.C. § 846 is U.S.S.G. 2D1.1(c)(7) which calls for a base offense level of 26 for offenses involving between 5 and 20 grams of cocaine base.                                                     26

23. Specific Offense Characteristic: The defendant possessed a firearm, and ammunition, which was found on top of the safe in which he kept his drug proceeds. It is believed that he possessed this firearm to protect his drug proceeds and a 2 level increase would be appropriate pursuant to U.S.S.G. § 2D1.1(b)(1) because he possessed the firearm in connection with his drug trafficking activities.          +2

# EXHIBIT

3

11

1       THE DEFENDANT:  Uh-huh.

2       THE COURT:  You read the report?

3       THE DEFENDANT:  Yeah.

4       THE COURT:  And Mr. Palmieri went over the report

5  with you?

6       THE DEFENDANT:  Somewhat, yeah.

7       THE COURT:  All right.  What is it in the report

8  that -- now, that you don't understand?

9       (Pause.)

10       THE COURT:  Have you filed an appearance, Mr.

11  Palmieri?

12       MR. PALMIERI:  Yes, I have, Your Honor.

13       (Pause.)

14       MR. PALMIERI:  It doesn't appear that Mr. Graham has

15  any questions about the presentencing report.

16       THE COURT:  You understand everything that's in that

17  report, Mr. Graham?

18       THE DEFENDANT:  Just about.

19       THE COURT:  All right.  Do you have any questions

20  now, that you want to ask Mr. Palmieri, about anything in the

21  report?

22       THE DEFENDANT:  No.

23       MR. PALMIERI:  Thank you for that opportunity, Your

24  Honor.

25       THE COURT:  All right.  Then I'll order the report

12

1  filed in the clerk's office under seal.  In the event of an

2  appeal in this matter, it may be unsealed and made available

3  to appellate counsel.  No appeal is taken, it will be unsealed

4  and returned to the clerk's office.

5          There any issues in dispute with respect to the

6  report or the guideline calculations, Ms. Gifford?

7          MS. GIFFORD:  There are a couple of issues, Your

8  Honor.

9          The issue in dispute that appears to remain is the

10  obstruction of justice enhancement and whether that applies.

11  There are some other issues that aren't necessarily

12  objections, but are issues that were highlighted by the

13  probation office in the report, such as the calculation of the

14  base offense level and whether acceptance of responsibility

15  applies in this matter, and I can address all of those if

16  you'd like.

17          THE COURT:  Go ahead.

18          MS. GIFFORD:  The base offense level, Your Honor, is

19  simply, the government is just gonna stand by its agreement.

20  We understand the probation officer's position as far as

21  relevant conduct, but what we -- we will request the Court to

22  apply the base offense level as stated in the calculation or

23  if this Court decides that it needs to apply the 400 grams of

24  crack as calculated by the United States probation officer, we

25  would ask the Court to depart downward to give effect to the

13

1   plea agreement, and we cite a case in support of that in our

2   sentencing memorandum.

3           On the obstruction of justice enhancement, Your

4   Honor --  There's also an obstruction -- a couple of other

5   enhancements which are not in dispute, that's the use of a

6   minor and possession of dangerous weapons during the drug

7   trafficking offense, and I don't believe there's any dispute

8   on the applicability of those enhancements.

9           The third enhancement that was reserved by the

10  government in the plea agreement was obstruction of justice,

11  and if I may, Your Honor, I'd like to approach and just submit

12  and exhibit, Government Exhibit Number 1, which is a plea

13  agreement for defendant's codefendant, Vivian Rogers, and

14  attached to that plea agreement is a stipulation of offense

15  conduct, in which Ms. Rogers stipulates --

16          THE COURT:  I'll order this marked as an exhibit in

17  this matter.  Go ahead.

18          MS. GIFFORD:  Thank you, Your Honor.

19          In that plea agreement, Defendant Rogers stipulates,

20  in the stipulation of offense conduct, that she knowingly

21  provided the false testimony to the grand jury at the request

22  of Damon Graham and others.  This was part of a stipulation of

23  offense conduct when Vivian Rogers pled guilty to a substitute

24  information.

25          Ms. Rogers has been indicted along with Damon

1  Graham, and she was allowed to plead guilty to a substitute

2  information charging her with making false declarations to a

3  grand jury in violation of Title 18, United States Code,

4  Section 1623.

5           So in light of that plea agreement in the

6  government's exhibit, the government would submit that the

7  defendant participated in suborning perjury and that the

8  obstruction of justice enhancement applies in this case.

9           Finally, on acceptance of responsibility, the

10 probation officer correctly noted that acceptance of

11 responsibility generally does not apply when obstruction of

12 justice does apply, and that -- except in extraordinary

13 circumstances, and the government would stand by its agreement

14 to recommend acceptance of responsibility in this case.

15           In this case, Your Honor, the obstruction of

16 justice; that is, Mr. Graham's attempts to suborn perjury

17 through his girlfriend, Vivian Rogers, occurred prior to

18 indictment, certainly prior to this plea in this matter.

19 Since Mr. Graham's plea, we have not had any information that

20 the defendant has engaged in any conduct or tampering with

21 witnesses or any other conduct which would result in a

22 obstruction of justice enhancement post-plea.

23           The agreement -- We stand by our recommendation at

24 this time in the hearing.  Of course, if other things come to

25 light during the course of this hearing, we may ask to revisit

1    the acceptance of responsibility recommendation, but at this

2    point the government stands by its agreement.

3              Unless the Court has any questions --

4              THE COURT:  No.  Thank you.  Mr. Palmieri?

5              MR. PALMIERI:  Yes, thank you, Your Honor.  I think

6    that attorney -- U.S. Attorney Gifford does accurately state

7    the position of the parties.   The last remaining dispute is

8    the obstruction of justice enhancement.   The purported

9    obstruction -- the purported conduct which constitutes the

10   obstruction of justice is related only by Vivian Rogers and

11   this, as the exhibit just entered into evidence by the -- by

12   United States, this person is a person who was being -- who

13   was under indictment for the same conduct that Mr. Graham was

14   under indictment for, who, if the facts for the purpose of

15   this particular argument are adopted, was present in the place

16   where money was seized, where there were purportedly found

17   traces of cocaine.

18              This is a person who has a very great motive to

19   distance herself from any of the proceeds that are alleged to

20   have come from the sales or conspiracy to sell drugs.

21              This person's testimony changed with the weather and

22   with the circumstances.  When it was in her best interest to

23   say that none of the money was hers to the arresting

24   individuals who took her statement, she did so.  When it

25   seemed that Mr. Graham was going to take the weight of the

FORM C-100 - LASER   REPORTERS PAPER & MFG. CO.   800-626-6313

16

1   responsibility for where this money purportedly came from, and

2   she would be on the outside, she said most of the money was

3   hers and her family's and friends, thereby, I guess, giving

4   her an opportunity to have the money released to her, and now,

5   when it's in her best interest to make a statement that

6   certainly resulted in a lower charge against her, the

7   substitute information, she now says that, oh, the money, in

8   fact, all belonged to my client, to Mr. Graham, and to a party

9   by the name of Mr. James, who was not initially indicated as

10  having had any proprietary interest in this money in either of

11  the two prior instances.

12        Basically, Your Honor, the only conduct which would

13  allegedly constitute -- the only evidence which would

14  allegedly support the obstruction of justice, comes from this

15  highly noncredible witness.  I don't even know what the

16  conduct particularly is, and it's only articulated in the

17  vaguest of terms in the documents that had been filed by the

18  government in this case, that somehow or other Mr. Graham

19  while he was in jail, influenced Ms. Rogers to change her

20  testimony around as she had.  I would submit then Ms. Rogers

21  knew what she was doing, changed her testimony as it suited

22  Ms. Rogers.  Mr. Graham, who was incarcerated, had nothing to

23  do with that, nor did he have any involvement with anyone who

24  could have had anything to do with that, and there is no

25  evidence to support that.

1         Regarding the base offense level, that is, in fact,
2    the level that we had entered into a plea agreement.
3    Apparently, the government is willing to stand by that
4    agreement, so is Mr. Graham.
5         Regarding the acceptance of responsibility, there
6    has been a downward departure cognized in the plea agreement.
7    Mr. Graham has fully accepted responsibility for the conduct
8    that is at issue in this case.  He has not said, he is not now
9    going to say, nor has he ever said that he did not do it.  He
10   took his responsibility, acknowledged his personal behavior
11   and said that he was wrong and appreciated the wrongfulness of
12   that conduct.
13        It behooves me, Your Honor, to indicate that Mr.
14   Graham, as the Court is aware, as the government certainly is
15   aware, has filed several motions on his own behalf.  Mr.
16   Graham may address those motions and these matters to the
17   Court.  I would ask that Your Honor separate Mr. Graham's
18   acceptance of responsibility for his personal actions from his
19   arguments, as he perceives the law related to -- if I can, for
20   lack of a better word, call it the "jurisdiction" of the court
21   to sentence him.
22        Any of his arguments which he advances on his own
23   behalf, if he does that, have nothing to do with his personal
24   acceptance of the responsibility.  He maintains that he
25   accepts the responsibility for the conduct that he was

FORM C-100 - LASER   REPORTERS PAPER & MFG. CO.   800-626-6313

1  involved in.  Yet, on the other hand, as Your Honor knows is

2  frequently done in legal proceedings, he --

3        THE COURT:  Well, I'm going to give him acceptance,

4  so we don't have to spend a lot of time on this.

5        MR. PALMIERI:  Beyond that, Your Honor, I believe I

6  have nothing further to say regarding the issues in dispute,

7  and thank you for hearing me.

8        THE COURT:  All right.  The Court finds that the

9  two-level increase for obstruction of justice pursuant to

10  3C1.1 is warranted under the commentary application notes,

11  3(b).  Committing, suborning, or attempting to suborn perjury

12  is an example of the type of conduct to which the enhancement

13  applies.

14        Vivian Rogers, who was his girlfriend, admitted and

15  pled guilty to making false declarations to a grand jury, and

16  her plea was based on false testimony that she gave to the

17  grand jury concerning the activities of this defendant, Damon

18  Graham, and she did, in fact, pursuant to Government's Exhibit

19  1, in connection with this sentencing proceeding, which is the

20  plea agreement between the United States and Vivian Rogers,

21  indicate in the stipulation of offense conduct that she

22  provided that false testimony to the grand jury at the request

23  of Damon Graham, so that the two-level enhancement for

24  obstruction is warranted.

25        Therefore, the Court finds that the Offense Level is

1   29 with a Criminal History category of III.  The guideline

2   range, from the sentencing table, is 108 to 135 months.

3          Now I'll hear from you, Mr. Palmieri, on the issue

4   of sentencing.

5          MR. PALMIERI:  Thank you.  Good afternoon once

6   again, Your Honor.

7          As the probation officer, Mr. Lopez himself, points

8   out, we were faced with sentencing on a very serious charge to

9   a very serious amount of jail time, a person who is a mere 20

10  years old.  A person who, without pulling any punches, has

11  amassed a poor record behind him.  He's got a poor record, but

12  it's a young man who has familial support, as best as his

13  circumstances permit, in the person of his mother, his

14  grandmother, his siblings; a mother who has, for 20 years,

15  worked diligently for the telephone company, worked at a job

16  to do the best that she could under very, very difficult

17  circumstances to support a family without help from a father.

18  A father who they knew lived in the next town.  A father who,

19  of his own desire, and I'm sorry, Damon, did not want to be

20  bothered with his children, who did not present any sort of a

21  male strong role model for this young man.

22          You've got a working mom, you've got a young kid

23  living in the Fair Haven section of New Haven, one of the

24  roughest, toughest, most crime ridden sections of New Haven,

25  and when a young man, who turns into a man very quickly in