UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA,   .    Docket No. 3:00-CR-00058
                         .    (AHN)
          Plaintiff,  .
                         .    Bridgeport, Connecticut
    v.                .    September 25, 2000
                         .
DAMON GRAHAM,            .
                         .
          Defendant.  .
. . . . . . . . . . . . .

SENTENCING HEARING
BEFORE THE HONORABLE ALAN H. NEVAS
SENIOR UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiff:          Office of the U.S. Attorney
                         By:  NANCY GIFFORD, ESQ.
                         915 Lafayette Boulevard
                         Bridgeport, Connecticut 06604

For the Defendant:         Williams and Pattis, PC.
                         By:  WILLIAM PALMIERI, ESQ.
                         51 Elm Street
                         Suite 409
                         New Haven, Connecticut 06510

For Probation:             Federal Probation Office
                         By:  MR. RAY LOPEZ
                         157 Church Street
                         New Haven, Connecticut 06510

Proceedings recorded by electronic sound recording, transcript produced by transcription service.

---

**BOWLES REPORTING SERVICE**
**2 Chapman Lane, Suite 1-E, Gales Ferry, Connecticut 06335**
**(860) 464-1083**

**EXHIBIT 1**

I N D E X

| EXHIBITS: | | Offered | Admitted |
|---|---|---|---|
| Court Exhibit I | Stipulations of Defense Conduct | 13 | 2 |

FORM C-100 - LASER   REPORTERS PAPER & MFG. CO.   800-626-6313

1           (Proceedings commenced at 9:30 a.m.)

2               THE COURT:  Good morning.  Before we proceed

3   further, am I correct, Mr. Palmieri, that you are just going

4   over the presentence report with your client?

5               MR. PALMIERI:  I was discussing matters with my

6   Client in --

7               THE COURT:  Just answer my --

8               MR. PALMIERI:  In addition to re-reviewing the

9   presentence.

10              THE COURT:  Has it been reviewed with him?

11              MR. PALMIERI:  It has not been completely, Your

12  Honor.  Mr. Graham was just --

13              THE COURT:  What do you mean by "completely"?

14              MR. PALMIERI:  Mr. Graham was just brought in about

15  ten

16  minutes ago.

17              THE COURT:  Well, this presentence report has been

18  available since -- When was it disclosed, Mr. Lopez?

19              MR. LOPEZ:  The first disclosure was on August

20  17th, Your Honor.

21              THE COURT:  You mean to say that since August 17th

22  your office hasn't gotten this presentence report to your

23  client?

24              MR. PALMIERI:  Mr. Graham has had a copy of the

25  presentence --

FORM C-100 - LASER   REPORTERS PAPER & MFG. CO.   800-626-6313

1        THE COURT:  When?

2        MR. PALMIERI:  -- investigation report.

3        THE COURT:  When did he get it?

4        MR. PALMIERI:  I'm certain that it was sent in a

5   timely fashion by Attorney Pattis in the month of August.  I

6   have a letter confirming that.  No one has been able to speak

7   directly to Mr. Graham in person, and I was just --

8        THE COURT:  You're retained, aren't you?

9        MR. PALMIERI:  Absolutely, Your Honor.

10       THE COURT:  Mr. Graham, you want to stand up?  Has

11  anyone come to see you about this presentence report?

12       THE DEFENDANT:  No, sir.

13       THE COURT:  Is this morning the first time that

14  anybody from Mr. Williams' office ever discussed the report

15  with you?

16       THE DEFENDANT:  Yes, sir.

17       THE COURT:  I'm not going forward with this

18  sentencing.

19       (Pause.)

20       THE COURT:  Take the client -- Take the defendant

21  back to the lockup.

22       Let Mr. Palmieri, just go over the report with him

23  and we'll take this matter up later this morning at some

24  recess --

25       MR. PALMIERI:  Thank you very much, Your Honor.

1        THE COURT:  I'm gonna start a trial, but you're

2   going to have to stick around here, Mr. Palmieri.

3        MR. PALMIERI:  Absolutely, Your Honor.

4        THE COURT:  And it may be until 5:00 o'clock this

5   afternoon.

6        MR. PALMIERI:  I apologize.

7        (Recess at 9:30 a.m., until 12:20 p.m.)

8                      AFTER RECESS

9        MS. GIFFORD:  Good afternoon, Your Honor.  Nancy

10  Gifford on behalf of the United States attorney's office and

11  with me at counsel table are Anthony Kaplan from the U.S.

12  attorney's office, and Brian Donnelly from the Federal Bureau

13  of Investigation.

14        Also present in the courtroom is Defense Attorney

15  William Palmieri and the defendant, Damon Graham, and Ray

16  Lopez, Senior United States Probation Officer.

17        MR. PALMIERI:  Good afternoon, Your Honor.

18        THE COURT:  Good afternoon.  All right.

19        Mr. Graham, have you now had an opportunity to read

20  the presentence report?

21        THE DEFENDANT:  Before I answer that question I want

22  to bring some attention to the Court first.

23        (The Defendant and Defense Counsel confer.)

24        THE COURT:  I don't want to hear any speeches.   I

25  just asked --

```
 1                THE DEFENDANT:  No, it's not a speech.
 2                THE COURT:  I just asked you a question.
 3                THE DEFENDANT:  Yeah, but before I answer the
 4     question I want to --
 5                THE COURT:  Well, --
 6                THE DEFENDANT:  -- bring some things to the
 7     attention of the Court.
 8                THE COURT:  I asked you a question.
 9                Have you read the presentence report?
10                THE DEFENDANT:  No, I didn't read it yet.
11                THE COURT:  You didn't read --
12                THE DEFENDANT:  I don't understand what's going on
13     in it.
14                THE COURT:  I'm sorry?
15                THE DEFENDANT:  I don't understand what's going on
16     in here.
17                THE COURT:  You don't understand what's going on
18     here?  You know you're here for sentencing today?
19                THE DEFENDANT:  Yeah, I know I was supposed to be
20     brought here for sentencing today.
21                THE COURT:  I'm sorry?
22                THE DEFENDANT:  Yeah, I'm supposed to be brought
23     here for sentencing today.
24                THE COURT:  Yeah, you're here for sentencing, that
25     correct?
```

1           THE DEFENDANT:   That's what I was brought here today

2   for, yes.

3           THE COURT:   All right, and you know that the

4   probation officer prepared a presentence report?

5           THE DEFENDANT:   Yeah, he prepared one.

6           THE COURT:   Did you read it?

7           THE DEFENDANT:   No, I didn't read it.

8           THE COURT:   Show it to him, Mr. Palmieri.

9           MR. PALMIERI:   Your Honor, I'm showing Mr. Graham

10  the presentence investigation report, and we did discuss it at

11  length.

12          THE COURT:   You telling me now that that report that

13  Mr. Palmieri just showed you, that you haven't read it?

14          THE DEFENDANT:   No, I didn't read it.

15       (Pause.)

16          THE COURT:   You telling me the truth?

17          THE DEFENDANT:   The truth.

18          THE COURT:   Well, Mr. Palmieri just went over it

19  with you; did he not?

20          THE DEFENDANT:   He went over it with me but I didn't

21  understand it.   I didn't understand it.

22          How I'm going to understand something in ten, twenty

23  minutes?

24       (Pause.)

25          THE COURT:   Mr. Palmieri, you were in -- we were in

1  court at about 9:30 a.m. this morning and there was an

2  indication that you hadn't had time to go over this report,

3  that the client hadn't read it.

4      What's happened between 9:30 and now?  It's 12:20

5  p.m.  Hasn't -- Didn't you get him a copy of the report to

6  read?

7      MR. PALMIERI:  Yes, Your Honor.  Thank you very much

8  for that opportunity and that time, and I apologize for any

9  delay that might have caused to Your Honor and other

10 proceedings.

11      Immediately after we recessed at 9:30 or so, I spoke

12 with Mr. Graham in the probation office.  I spent

13 approximately two hours, perhaps a little less than two hours,

14 with Mr. Graham.  Maybe about an hour and a half with Mr.

15 Graham.

16      I did go over each and every page of that report

17 with Mr. Graham in detail and explained the report to him, and

18 offered to answer any questions that he did have.

19      I also know that Mr. Graham did receive, or at least

20 we mailed him a copy of that presentence investigation report.

21      Wholly apart from Mr. Graham's disagreement with

22 certain aspects of this proceeding, I believe Mr. Graham has

23 had an opportunity to discuss that report with me and it

24 appears that he understands the report.

25      THE COURT:  Did you get a copy of the report?  Where

1  are you being housed, at Wyatt?

2              THE DEFENDANT:  Yeah.

3              THE COURT:  Did you get a copy of the report mailed

4  to you at Wyatt?

5              THE DEFENDANT:  Uh-huh.

6              THE COURT:  You answer "Yes" or "No."  I don't want

7  any --

8              THE DEFENDANT:  Yes.

9              THE COURT:  -- uh-huh's.

10             THE DEFENDANT:  Yes.

11             THE COURT:  And when you got a copy of the report at

12 Wyatt, did you read it?

13             THE DEFENDANT:  Yeah, I read it.

14             THE COURT:  Why did you tell me a few minutes ago

15 that you hadn't read it?

16             THE DEFENDANT:  I didn't understand it.  That's what

17 I'm trying to tell you.  I'm going to read something, but I

18 don't understand what I'm reading.  It's like I'm reading

19 nothing.

20             THE COURT:  So you read the report?

21             THE DEFENDANT:  Yeah.

22             THE COURT:  And did Mr. Palmieri just spend about an

23 hour and a half with you going over the report?

24             THE DEFENDANT:  Not about an hour and a half.

25             THE COURT:  How long?

FORM C-100 - LASER  REPORTERS PAPER & MFG. CO.  800-626-6313

1              THE DEFENDANT:  About twenty -- ten, twenty minutes.

2              THE COURT:  How long was it, Mr. Palmieri?

3              MR. PALMIERI:  To the best of my recollection, I

4    left the court when we recessed.  As much time as it took to

5    get Mr. Graham situated, factoring out about five minutes or

6    so.  I was out in the area when another inmate was being moved

7    for this trial, up until approximately fifteen -- ten or

8    fifteen minutes before I appeared in court in this proceeding,

9    which I recall as being approximately twenty after eleven or

10   so.  So I'm calculating roughly somewhere approximately an

11   hour and a half is my recollection, Your Honor.

12             THE COURT:  All right.

13             MR. PALMIERI:  And we did discuss other matters

14   during --

15             THE COURT:  And during that hour and a half, what

16   occurred, Mr. Palmieri?

17             MR. PALMIERI:  We discussed the presentence

18   investigation report at length, page by page, line by line,

19   and other -- I fielded other questions and discussed other

20   matters with Mr. Graham.  We didn't spend the entire time

21   discussing the PSR, but we did discuss this matter today.

22             THE COURT:  That correct, Mr. Graham?

23             THE DEFENDANT:  Yes.

24             THE COURT:  All right.  So you did read the report,

25   correct?

1          THE DEFENDANT:  Uh-huh.

2          THE COURT:  You read the report?

3          THE DEFENDANT:  Yeah.

4          THE COURT:  And Mr. Palmieri went over the report

5   with you?

6          THE DEFENDANT:  Somewhat, yeah.

7          THE COURT:  All right.  What is it in the report

8   that -- now, that you don't understand?

9          (Pause.)

10          THE COURT:  Have you filed an appearance, Mr.

11   Palmieri?

12          MR. PALMIERI:  Yes, I have, Your Honor.

13          (Pause.)

14          MR. PALMIERI:  It doesn't appear that Mr. Graham has

15   any questions about the presentencing report.

16          THE COURT:  You understand everything that's in that

17   report, Mr. Graham?

18          THE DEFENDANT:  Just about.

19          THE COURT:  All right.  Do you have any questions

20   now, that you want to ask Mr. Palmieri, about anything in the

21   report?

22          THE DEFENDANT:  No.

23          MR. PALMIERI:  Thank you for that opportunity, Your

24   Honor.

25          THE COURT:  All right.  Then I'll order the report

1  filed in the clerk's office under seal.  In the event of an
2  appeal in this matter, it may be unsealed and made available
3  to appellate counsel.  No appeal is taken, it will be unsealed
4  and returned to the clerk's office.

5              There any issues in dispute with respect to the
6  report or the guideline calculations, Ms. Gifford?

7              MS. GIFFORD:  There are a couple of issues, Your
8  Honor.

9              The issue in dispute that appears to remain is the
10  obstruction of justice enhancement and whether that applies.
11  There are some other issues that aren't necessarily
12  objections, but are issues that were highlighted by the
13  probation office in the report, such as the calculation of the
14  base offense level and whether acceptance of responsibility
15  applies in this matter, and I can address all of those if
16  you'd like.

17              THE COURT:  Go ahead.

18              MS. GIFFORD:  The base offense level, Your Honor, is
19  simply, the government is just gonna stand by its agreement.
20  We understand the probation officer's position as far as
21  relevant conduct, but what we -- we will request the Court to
22  apply the base offense level as stated in the calculation or
23  if this Court decides that it needs to apply the 400 grams of
24  crack as calculated by the United States probation officer, we
25  would ask the Court to depart downward to give effect to the

1  plea agreement, and we cite a case in support of that in our
2  sentencing memorandum.

3          On the obstruction of justice enhancement, Your
4  Honor -- There's also an obstruction -- a couple of other
5  enhancements which are not in dispute, that's the use of a
6  minor and possession of dangerous weapons during the drug
7  trafficking offense, and I don't believe there's any dispute
8  on the applicability of those enhancements.

9          The third enhancement that was reserved by the
10  government in the plea agreement was obstruction of justice,
11  and if I may, Your Honor, I'd like to approach and just submit
12  and exhibit, Government Exhibit Number 1, which is a plea
13  agreement for defendant's codefendant, Vivian Rogers, and
14  attached to that plea agreement is a stipulation of offense
15  conduct, in which Ms. Rogers stipulates --

16          THE COURT:  I'll order this marked as an exhibit in
17  this matter.  Go ahead.

18          MS. GIFFORD:  Thank you, Your Honor.

19          In that plea agreement, Defendant Rogers stipulates,
20  in the stipulation of offense conduct, that she knowingly
21  provided the false testimony to the grand jury at the request
22  of Damon Graham and others.  This was part of a stipulation of
23  offense conduct when Vivian Rogers pled guilty to a substitute
24  information.

25          Ms. Rogers has been indicted along with Damon

1  Graham, and she was allowed to plead guilty to a substitute
2  information charging her with making false declarations to a
3  grand jury in violation of Title 18, United States Code,
4  Section 1623.

5       So in light of that plea agreement in the
6  government's exhibit, the government would submit that the
7  defendant participated in suborning perjury and that the
8  obstruction of justice enhancement applies in this case.

9       Finally, on acceptance of responsibility, the
10  probation officer correctly noted that acceptance of
11  responsibility generally does not apply when obstruction of
12  justice does apply, and that -- except in extraordinary
13  circumstances, and the government would stand by its agreement
14  to recommend acceptance of responsibility in this case.

15       In this case, Your Honor, the obstruction of
16  justice; that is, Mr. Graham's attempts to suborn perjury
17  through his girlfriend, Vivian Rogers, occurred prior to
18  indictment, certainly prior to this plea in this matter.
19  Since Mr. Graham's plea, we have not had any information that
20  the defendant has engaged in any conduct or tampering with
21  witnesses or any other conduct which would result in a
22  obstruction of justice enhancement post-plea.

23       The agreement -- We stand by our recommendation at
24  this time in the hearing.  Of course, if other things come to
25  light during the course of this hearing, we may ask to revisit

1  the acceptance of responsibility recommendation, but at this
2  point the government stands by its agreement.

3          Unless the Court has any questions --

4          THE COURT:  No.  Thank you.  Mr. Palmieri?

5          MR. PALMIERI:  Yes, thank you, Your Honor.  I think
6  that attorney -- U.S. Attorney Gifford does accurately state
7  the position of the parties.  The last remaining dispute is
8  the obstruction of justice enhancement.  The purported
9  obstruction -- the purported conduct which constitutes the
10  obstruction of justice is related only by Vivian Rogers and
11  this, as the exhibit just entered into evidence by the -- by
12  United States, this person is a person who was being -- who
13  was under indictment for the same conduct that Mr. Graham was
14  under indictment for, who, if the facts for the purpose of
15  this particular argument are adopted, was present in the place
16  where money was seized, where there were purportedly found
17  traces of cocaine.

18          This is a person who has a very great motive to
19  distance herself from any of the proceeds that are alleged to
20  have come from the sales or conspiracy to sell drugs.

21          This person's testimony changed with the weather and
22  with the circumstances.  When it was in her best interest to
23  say that none of the money was hers to the arresting
24  individuals who took her statement, she did so.  When it
25  seemed that Mr. Graham was going to take the weight of the

1  responsibility for where this money purportedly came from, and
2  she would be on the outside, she said most of the money was
3  hers and her family's and friends, thereby, I guess, giving
4  her an opportunity to have the money released to her, and now,
5  when it's in her best interest to make a statement that
6  certainly resulted in a lower charge against her, the
7  substitute information, she now says that, oh, the money, in
8  fact, all belonged to my client, to Mr. Graham, and to a party
9  by the name of Mr. James, who was not initially indicated as
10 having had any proprietary interest in this money in either of
11 the two prior instances.

12          Basically, Your Honor, the only conduct which would
13 allegedly constitute -- the only evidence which would
14 allegedly support the obstruction of justice, comes from this
15 highly noncredible witness.  I don't even know what the
16 conduct particularly is, and it's only articulated in the
17 vaguest of terms in the documents that had been filed by the
18 government in this case, that somehow or other Mr. Graham,
19 while he was in jail, influenced Ms. Rogers to change her
20 testimony around as she had.  I would submit then Ms. Rogers
21 knew what she was doing, changed her testimony as it suited
22 Ms. Rogers.  Mr. Graham, who was incarcerated, had nothing to
23 do with that, nor did he have any involvement with anyone who
24 could have had anything to do with that, and there is no
25 evidence to support that.

1            Regarding the base offense level, that is, in fact,
2   the level that we had entered into a plea agreement.
3   Apparently, the government is willing to stand by that
4   agreement, so is Mr. Graham.

5            Regarding the acceptance of responsibility, there
6   has been a downward departure cognized in the plea agreement.
7    Mr. Graham has fully accepted responsibility for the conduct
8   that is at issue in this case.  He has not said, he is not now
9   going to say, nor has he ever said that he did not do it.  He
10  took his responsibility, acknowledged his personal behavior
11  and said that he was wrong and appreciated the wrongfulness of
12  that conduct.

13           It behooves me, Your Honor, to indicate that Mr.
14  Graham, as the Court is aware, as the government certainly is
15  aware, has filed several motions on his own behalf.  Mr.
16  Graham may address those motions and these matters to the
17  Court.  I would ask that Your Honor separate Mr. Graham's
18  acceptance of responsibility for his personal actions from his
19  arguments, as he perceives the law related to -- if I can, for
20  lack of a better word, call it the "jurisdiction" of the court
21  to sentence him.

22           Any of his arguments which he advances on his own
23  behalf, if he does that, have nothing to do with his personal
24  acceptance of the responsibility.  He maintains that he
25  accepts the responsibility for the conduct that he was

1    involved in.  Yet, on the other hand, as Your Honor knows is
2    frequently done in legal proceedings, he --

3              THE COURT:  Well, I'm going to give him acceptance,
4    so we don't have to spend a lot of time on this.

5              MR. PALMIERI:  Beyond that, Your Honor, I believe I
6    have nothing further to say regarding the issues in dispute,
7    and thank you for hearing me.

8              THE COURT:  All right.  The Court finds that the
9    two-level increase for obstruction of justice pursuant to
10   3C1.1 is warranted under the commentary application notes,
11   3(b).  Committing, suborning, or attempting to suborn perjury
12   is an example of the type of conduct to which the enhancement
13   applies.

14             Vivian Rogers, who was his girlfriend, admitted and
15   pled guilty to making false declarations to a grand jury, and
16   her plea was based on false testimony that she gave to the
17   grand jury concerning the activities of this defendant, Damon
18   Graham, and she did, in fact, pursuant to Government's Exhibit
19   1, in connection with this sentencing proceeding, which is the
20   plea agreement between the United States and Vivian Rogers,
21   indicate in the stipulation of offense conduct that she
22   provided that false testimony to the grand jury at the request
23   of Damon Graham, so that the two-level enhancement for
24   obstruction is warranted.

25             Therefore, the Court finds that the Offense Level is

1   29 with a Criminal History category of III.  The guideline

2   range, from the sentencing table, is 108 to 135 months.

3          Now I'll hear from you, Mr. Palmieri, on the issue

4   of sentencing.

5          MR. PALMIERI:  Thank you.  Good afternoon once

6   again, Your Honor.

7          As the probation officer, Mr. Lopez himself, points

8   out, we were faced with sentencing on a very serious charge to

9   a very serious amount of jail time, a person who is a mere 20

10  years old.  A person who, without pulling any punches, has

11  amassed a poor record behind him.  He's got a poor record, but

12  it's a young man who has familial support, as best as his

13  circumstances permit, in the person of his mother, his

14  grandmother, his siblings; a mother who has, for 20 years,

15  worked diligently for the telephone company, worked at a job

16  to do the best that she could under very, very difficult

17  circumstances to support a family without help from a father.

18  A father who they knew lived in the next town.  A father who,

19  of his own desire, and I'm sorry, Damon, did not want to be

20  bothered with his children, who did not present any sort of a

21  male strong role model for this young man.

22         You've got a working mom, you've got a young kid

23  living in the Fair Haven section of New Haven, one of the

24  roughest, toughest, most crime ridden sections of New Haven,

25  and when a young man, who turns into a man very quickly in

1   that area of New Haven, when a young man looks for role

2   models, he's sees other young men making fast money, driving

3   nice cars, wearing jewelry, and it involves drugs.

4           That's not to say that Mr. Graham doesn't have a

5   good mind because I believe he's got a good mind and a strong

6   one and he's a smart guy, but his circumstances conspired

7   against a young man, and we know how young people don't have

8   that same background that some of us who have some years

9   behind us have.  They don't know how to reach into that well

10   and say, "I can see this person making the fast money.  My mom

11   is not around, no one else is around to tell me what to do,

12   but I'm going to do the right thing."  He didn't have that

13   ability to do that like some others might, so he went the

14   wrong way, and he's here now.

15           Your Honor has limited discretion, but Your Honor

16   could recognize a youth, from these terrible circumstances,

17   who would benefit from the small amount of discretion that

18   Your Honor has to give this young man a little bit of a leg

19   up, so that when he gets back into society, it's not as a

20   hardened criminal of thirty-something years old, who's done

21   enough time in jail to really know how to commit crimes.  He's

22   going to do some time, he has to, but with Your Honor's

23   discretion, Mr. Graham could do less time, could get back to

24   the possibility that he could right the mistakes that were

25   made with his upbringing.

1        Now, his mom did a hell of a job as best she could.

2        Mr. Graham also shows a little glimmer of promise

3  that aside from the bad things that I've talked about, unlike

4  his father, he's gotten into a relationship that has been

5  stable up until this very terrible event, with the very same

6  Ms. Vivian Rogers.  They had a child together.  The child, I

7  believe, is now 18 months, was 15 months at the time of the --

8  is about 18 months years old.

9        When Mr. Graham, a young man of 17 and a half years

10  old, 18 years old, 17 and a half, got a girl pregnant, he had

11  more courage than his father had, to stick with Mrs. -- with

12  Ms. Rogers, to become engaged to her, and in the wrong way do

13  the right things to present a family -- cohesive family unit

14  that he supported, and supported his fiance and his child and,

15  in fact, a child from an earlier relationship of Ms. Rogers,

16  who's six years old.  He had the courage and he had that

17  admirable spark in him that says, "I'm not going to run away

18  from this, I'm going to make something of it," and that's

19  something that attests to Damon Graham's promise, a promise

20  that after he takes his responsibility for what he did and

21  does what he has to do, that there's still enough of a man,

22  enough of a promising citizen left, to add to this society

23  rather than to take from it, and I would ask that Your Honor

24  give him the best advantage that Your Honor is free to do, and

25  sentence him to the least amount of time, and to make that

1  sentence concurrent with any sentence that Mr. Graham is
2  presently serving.

3          He's going to spend a lot of his young life in jail.
4  Half again as much as he's already lived.  He's gonna have a
5  lot of time to enhance himself, and I'd ask that Your Honor
6  give him the opportunity to use this time to enhance rather
7  than to take away further from this young man.  Thank you.

8          THE COURT:  Mr. Graham, anything you wish to say?

9          THE DEFENDANT:  Your Honor, (inaudible).

10         THE COURT:  I can't hear you.

11         THE DEFENDANT:  I said I have some papers that I
12 have to file with the government, affidavit (inaudible) and
13 (inaudible) receipt saying that they went out, and the
14 attorneys and the return receipt saying that they was
15 received.  You know, the affidavit, on page 5 it says
16 (inaudible) they have ten days to respond.  If you like, you
17 could look at it, you didn't -- because you didn't receive a
18 copy of it.

19         THE COURT:  I've seen a copy.

20         THE DEFENDANT:  And then (inaudible) respond, I had
21 got no response.  If they had --

22         THE COURT:  I want to hear from -- anything you have
23 to say with respect to the sentence that I'm about to --

24         THE DEFENDANT:  Yes, this is with respect to
25 sentencing.

FORM C-100 - LASER   REPORTERS PAPER & MFG. CO.   800-626-6313

```
 1              THE COURT:  Well, I read it.  I don't understand it.
 2    It's a bunch of gobbely-gook to me.  I have no understanding
 3    of what you -- I don't even know that you wrote this.
 4              THE DEFENDANT:  I wrote this.  It's in my
 5    handwriting.  I had it sealed, notarized?
 6              THE COURT:  I understand.
 7              THE DEFENDANT:  I got the acknowledgement, the
 8    jurat.
 9              THE COURT:  Somebody dictate it to you?
10              THE DEFENDANT:  No.
11              THE COURT:  What does --
12              THE DEFENDANT:  It's all in my own handwriting.
13              THE COURT:  What does "censioned" mean?
14              THE DEFENDANT:  Censioned?
15              THE COURT:  Yeah.
16              THE DEFENDANT:  Where you see cension at?
17              THE COURT:  First word, first line.  One living,
18    censioned, free will, natural man.
19              THE DEFENDANT:  Censioned?
20              THE COURT:  Yeah.
21              THE DEFENDANT:  That conscious.  I'm conscious.  I'm
22    a natural man, I'm a human being, a natural, flesh and blood
23    human being, and the name that they have it on the indictment,
24    or the name they have styled here ain't me.  I spell my name,
25    capital "D," lowercase "a," lowercase "m," lowercase "o,"
```

1   lowercase "n."  Ivanhoe, capital "I," lowercase "v," lowercase

2   "a," lowercase "n," lowercase "h," lowercase "o," lowercase

3   "e."  Graham, is capital "G" --

4              THE COURT:  I understand.

5              THE DEFENDANT:  -- lowercase "r" --

6              THE COURT:  I understand.

7              THE DEFENDANT:  -- lowercase "a" --

8              THE COURT:  I want to know what you have to say with

9   respect to the sentence I'm about to impose.

10             THE DEFENDANT:  Because the government didn't rebut

11  in the ten days, so since they haven't rebut, they're in

12  default, so how can they move against me?  They can't produce

13  a document on which they rely upon to continue the liberty

14  restrictions as they must be estopped from pursuing any claims

15  on this case.

16             (The Defendant and Defense Counsel confer.

17             THE DEFENDANT:  I want -- For the record, can they

18  produce any document which they relied upon to continue the

19  liberty restrictions from which they are estopped from -- by

20  default from pursuant -- from any claims of this case, CR

21  Number 3:0058 AHN.

22             I got proof right here it went out from the post

23  office September 11th.  It was received, they have a copy

24  right there, I'm looking at, September 13th.  They had ten

25  days, that's the twenty-fifth, I have no response.  Did they

1   rebut?  Could you produce any documents?

2          Could the Court produce any documents on which they

3   relied upon?  If not, our business is done.  I want the order

4   of the Court.

5          THE COURT:  Anything else?

6          THE DEFENDANT:  Nothing else.  I want -- I would

7   like the order of the Court.  Nobody has any restrictions.

8          MR. PALMIERI:  Thank you, Your Honor.

9          MS. GIFFORD:  Your Honor, well, first of all we

10  would rely on defendant's entry of his plea of guilty earlier

11  in this matter, and other than we'll (inaudible) address

12  anything else that was set forth in the affidavit, our bill of

13  peace (phonetic).

14         Defendant has already received a huge break from the

15  government on this matter.  He has two prior convictions, both

16  for sale of narcotics.  The second (inaudible) conviction was

17  actually an armed robbery.  Defendant was holding a weapon

18  pointed at another individual.  Defendant was actually caught

19  acting with another person, and they were pointing a gun at

20  two other people trying to rob them of drugs and money when

21  police fortuitously entered, though they were executing a

22  search warrant, and were able to intervene.

23         The defendant was given -- In this case the

24  government did not file any 851 notice based on those two

25  prior convictions, and that resulted in defendant getting an

1  enormous break because he's not facing a mandatory minimum of
2  ten years to life.

3          In addition, the probation office highlighted
4  several facts which I understand, based on this Court's
5  earlier ruling, the Court has adopted the findings of fact in
6  the PSR?

7          THE COURT:  That's correct.

8          MR. GIFFORD:  Thank you, Your Honor, and in that
9  regard the government would note that the probation officer
10 highlighted that in May of 1999, that Mr. Graham was observed
11 by the New Haven Police Department engaging in numerous hand-
12 to-hand drug transactions.  At the time that this was
13 occurring, the defendant was out on -- actually was being
14 wanted and there was an arrest warrant for the defendant for
15 the earlier -- for the robbery charge that I had just
16 mentioned.

17         In June of 1999, they executed the search warrant at
18 the defendant's and Vivian Rogers' residence, and during that
19 search warrant they found $40,000 in cash, a bulletproof vest,
20 a gun, and the defendant was arrested and taken into custody,
21 and while in custody, defendant committed some -- committed
22 the drug transaction for which the -- our drug conspiracy
23 count arise, that is that he engaged in several telephone
24 calls, one to his minor sister and one to his girlfriend, he
25 kept the drug trafficking operation in business while he was

FORM C-100 - LASER   REPORTERS PAPER & MFG. CO.   800-626-6313

1   detained prior to posting bond.

2            So based on all of that, Your Honor, the government

3   would ask the Court to sentence the defendant towards the

4   higher end of the range, and we also believe that a

5   consecutive term is appropriate here since the defendant did

6   commit this offense while in prison, while detained.  He was -

7   - You know, when he was committing further drug transactions,

8   he was wanted and we believe, Your Honor, that a consecutive

9   term would be appropriate here.

10           THE COURT:  All right.  Mr. Graham?

11           THE DEFENDANT:  Yes, Your Honor.

12           THE COURT:  Please, stand up.

13           The sentence of the Court is as follows:

14           The defendant is committed to the custody of the

15  Bureau of Prisons for a period of 120 months.  That sentence

16  is to be served consecutive to the sentence currently being

17  served in state custody.

18           The Court places the defendant on supervised release

19  for a period of five years.

20           No fine is imposed.

21           A special assessment of $100 is imposed.

22           In addition to the standard conditions of supervised

23  release, the following conditions are imposed:

24           One, the defendant shall participate in a substance

25  abuse treatment program, either inpatient or outpatient, as

1  directed by the probation officer, which may include
2  urinalysis testing to determine if he has used drugs or
3  alcohol.

4          He shall pay all or a part of the -- all or a
5  portion of the cost associated with treatment, based on his
6  ability to pay, in an amount to be determined by the probation
7  officer.

8          Secondly, the defendant shall participate in a
9  mental health treatment program as directed by the probation
10 officer.

11         He shall pay all, or a portion, of the costs
12 associated with treatment based on his ability to pay, in an
13 amount to be determined by the probation officer.

14         The defendant is given credit for time served.

15         Well, Mr. Lopez, can he -- or Ms. Gifford, can he
16 get credit for time served since the day of his arrest, which
17 was February 15th, 2000, if he's been in state custody?

18         MR. GIFFORD:  I don't believe so, Your Honor.  I
19 believe he's been serving a state sentence.  I don't believe
20 he can get credit.

21         THE COURT:  What about that, Mr. Lopez?

22         MR. LOPEZ:  Yeah, I believe that the government is
23 correct that, that time will be applied towards the state
24 sentence.

25         THE COURT:  All right.  So there's no credit for

1 | time served.

2 | Also, based on some of the submissions and
3 | statements that the defendant has made, and a letter that the
4 | defendant has sent to the Court, I think that this defendant
5 | needs a psychiatric evaluation and I'm going to ask that he be
6 | designated, at least preliminarily, for psychiatric evaluation
7 | at a medical facility in the Bureau of Prisons, and then based
8 | on whatever findings they make, they may make -- they'll make
9 | further designations within the Bureau of Prisons with respect
10 | to that, but at least the recommendation of the Court is that
11 | the initial designation of this defendant be to a medical
12 | facility for a psychiatric evaluation.

13 | THE DEFENDANT: Your Honor, can I speak? Can I
14 | speak, Your Honor?

15 | THE COURT: Speak to your lawyer first before you --
16 | MR. PALMIERI: Thank you, Your Honor.
17 | (Pause.)

18 | THE DEFENDANT: Your Honor, since the government
19 | didn't produce (inaudible), how are they moving against me.
20 | It's under Criminal Code and Rules, Subsection -- It's Title
21 | 18, Subsection 4, misprison of felony, that exists from this
22 | day on right here. I have -- I brought knowledge that they're
23 | in default and they're still moving against me.

24 | THE COURT: All right. Anything else, Ms. Gifford?
25 | MR. GIFFORD: Nothing, Your Honor.

1           THE COURT:  Mr. Palmieri?

2           MR. PALMIERI:  Nothing, Your Honor.

3           THE COURT:  All right.

4       (Recess.)

5                       AFTER RECESS

6           THE COURT:  Court just wants to reopen this matter

7  briefly to -- The Court neglected to advise the defendant that

8  he has ten days within which to take an appeal.  If he can't

9  afford to pay the filing fee for the appeal, Mr. Graham, you

10 can make application to have the fee waived, and if you cannot

11 afford a lawyer to pursue the appeal, you can make application

12 to have a lawyer appointed to represent you.

13          MR. PALMIERI:  Thank you, Your Honor.

14      (Proceedings concluded.)

15

16

17

18

19

20

21

22

23

24

25

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

Stephen C. Bowles

November 8, 2000

STEPHEN C. BOWLES