UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
-------------------------------------------------------x
                                        :
UNITED STATES OF AMERICA                : Case No. 3:00CR00058(AHN)
                                        :
v.                                      :
                                        :
DAMON GRAHAM                            : March 31, 2008
                                        :
-------------------------------------------------------x
```

## MEMORANDUM IN SUPPORT OF MOTION TO AMEND JUDGMENT

The defendant, Damon Graham, respectfully submits this memorandum, through counsel, in support of his pro se motion for entry of an amended judgment in his case pursuant to 18 U.S.C. § 3582(c)(2). The defendant asks this Court to enter an amended judgment reducing his sentence under the revised guidelines applicable to crack cocaine offenses from 120 months to 96 months.

In applying retroactive amendments, the Guidelines support the notion of proportionality between the new sentence and the original sentence. See U.S.S.G. § 1B1.10, App. Note 3 ("When the original sentence represented a downward departure, a comparable reduction below the amended guideline range may be appropriate[.]"). The Court's original sentence of 120 months represented a point 44% above the bottom of the original guidelines range of 108 to 135 months.[1] The defendant requests that the Court impose an amended sentence at the same point within the revised guidelines range, that is, 44% above the bottom of the new range of 87 to 108 months, which would be 96 months.[2] In other words, the new sentence would be proportionally

---

[1] 120 months is 12 months more than the bottom of the range, 108 months. The total range spans 27 months. 12 months is 44% of 27 months.

[2] The new total range spans 21 months. 44% of 21 months is 9.33 months. Nine months above 87 months, the bottom of the new range, is 96 months.

the same as the old sentence, relative to the respectively applicable guidelines ranges.

## ARGUMENT

Amendment 706 to the Sentencing Guidelines took effect on November 1, 2007. See U.S.S.G., App. C, Amdt. 706 (2007). This amendment alters the drug quantity table set forth in U.S.S.G. § 2D1.1, reducing by two levels the base offense levels for offenses involving crack cocaine. See id. The amendment was adopted in an effort to address, at least in small part, the dramatic and unfair disparity between sentences for offenses involving crack cocaine and otherwise similar offenses involving powder cocaine. See id.

The unfairness of the disparate treatment between crack and powder cocaine offenses is well-documented and indisputable. See generally United States Sentencing Commission, Report to Congress: Cocaine and Federal Sentencing Policy (May 2007) (hereinafter "2007 Sentencing Commission Report"); see also Kimbrough v. United States, 128 S. Ct. 558, 568-69 (2007). The disparity itself and the underlying assumptions giving rise to it have largely been discredited.

> First, the Commission reported, the 100-to-1 ratio rested on assumptions about the relative harmfulness of the two drugs and the relative prevalence of certain harmful conduct associated with their use and distribution that more recent research and data no longer support. [The] ratio Congress embedded in the statute far 'overstates' both 'the relative harmfulness' of crack cocaine, and the 'seriousness of most crack cocaine offenses'. For example, the Commission found that crack is associated with 'significantly less trafficking-related violence . . . than previously assumed.' It also observed that 'the negative effects of prenatal crack cocaine exposure are identical to the negative effects of prenatal powder cocaine exposure.' The Commission furthermore noted that 'the epidemic of crack cocaine use by youth never materialized to the extent feared.'
>
> Second, the Commission concluded that the crack/powder disparity is inconsistent with the 1986 Act's goal of punishing major drug traffickers more severely than low-level dealers. Drug importers and major traffickers generally deal in powder cocaine, which is then converted into crack by street-level sellers. But the 100-to-1 ratio can lead to the 'anomalous' result that 'retail crack dealers get longer sentences than the wholesale drug distributors who supply theym the powder cocaine from which their crack is produced.'

> Finally, the Commission stated that the crack/powder sentencing differential 'fosters disrespect for and lack of confidence in the criminal justice system' because of a 'widely-held perception' that it 'promotes unwarranted disparity based on race.' Approximately 85 percent of defendants convicted of crack offenses in federal court are black; thus the severe sentences required by the 100-to-1 ratio are imposed 'primarily upon black offenders.'

Kimbrough, 128 S. Ct. at 568 (internal citations omitted).

The Supreme Court found that it was not unreasonable for a district court to conclude that the 100-to-1 "crack/powder disparity is at odds with § 3553(a)," resulting in sentences greater than necessary to serve the required purposes. Id. After the decision in Kimbrough was issued, the Sentencing Commission made its amendments to § 2D1.1 retroactive, in an effort "to alleviate some of the urgent and compelling problems associated with the penalty structure for crack cocaine offenses." See Sentencing Guidelines for United States Courts, 73 Fed. Reg. at 220. In fact, the Sentencing Commission emphasized that the amendment is not a complete response to the serious inequities incorporated into the Sentencing Guidelines for crack offenses:

> The Commission . . . views the amendment only as a partial remedy to some of the problems associated with the 100-to-1 drug quantity ratio. It is neither a permanent nor a complete solution to these problems. Any comprehensive solution requires appropriate legislative action by Congress. It is the Commission's firm desire that this report will facilitate prompt congressional action addressing the 100-to-1 drug quantity ratio.

2007 Sentencing Commission Report, at 10.

It was a recognition of a very serious flaw in the sentencing guidelines that led to the amendment at issue here. There can be no question but that "the crack/powder disparity produces disproportionately harsh sanctions, i.e., sentences for crack cocaine offenses 'greater than necessary' in light of the purposes of sentencing set forth in § 3553(a)." Kimbrough, 128 S. Ct. at 575. The significance of this flaw is not lessened by a specific defendant's conduct during his term of incarceration or by the details of his offense conduct. Mr. Graham's sentence was

unjustly severe because of the dramatic disparity between crack and powder cocaine offenses in the guidelines applicable at the time of his sentencing – guidelines which were then binding on this Court. The Sentencing Commission recognized this injustice and set out to address it by enacting an amendment that would close the gap, if only slightly, between sentences for the two forms of cocaine. Mr. Graham is no less entitled to a correction of the manifest injustice of the old crack guidelines than is any other defendant.

The Government has filed a notice agreeing that Mr. Graham is eligible for a reduction in his sentence under the amended sentencing guidelines. However, the Government contends that the Court should either decline to apply the reduction to Mr. Graham, or reduce his sentence only to a term of 108 months.

The Government states in its memorandum that the applicable adjusted offense level under the revised Guidelines is 27, and that at a Criminal History Category of III, the new sentencing range is 87 to 108 months. See Gov't Resp. at 5. The Government further states that if the Court elects to reduce Mr. Graham's sentence in accordance with the amended Guidelines, "it may want to consider reducing the sentence to 108 months which is approximately in the middle of the defendant's now applicable guideline range." See id. at 13. As noted above, a proportional reduction would actually result in a sentence of 96 months.

The Government points to two factors in support of its argument against a full two-level reduction in Mr. Graham's sentence; neither is an appropriate basis on which the Court should deny Mr. Graham the adjustment in his sentence warranted by the amendment.

The Government first argues that the nature of the offense conduct underlying Mr. Graham's conviction justifies denying or limiting relief to Mr. Graham under the amendment. Specifically, the Government points out that Mr. Graham's conduct in 1999, at the time of the

offense, involved possession of a firearm, obstruction of justice, and use of a minor.

The Western District of Virginia recently addressed a similar argument by the Government that a defendant's criminal history – history that was established and known to the Court prior to the sentencing for the offense of conviction – justified denial of the reduction. The Court rejected that argument, stating: "The guidelines provide a mechanism for consideration of these prior convictions through calculation of a criminal history score. . . . To do as the government suggests, would doubly penalize the defendant for his criminal history." United States v. Ayala, -- F. Supp. 2d --, 2008 WL 555525 at *2 (W.D. Va. Feb. 26, 2008). That reasoning applies with equal force here.

The issues identified by the Government were taken into account when Mr. Graham's original offense level was calculated. The Guidelines provide a mechanism for consideration of obstruction of justice, possession of a weapon, and use of a minor. Each of these enhancements was identified in the Pre-Sentence Report prepared by the Probation Office in advance of Mr. Graham's sentencing, and the Probation Office recommended that each of the enhancements be applied. The Court was fully aware of each of these issues at the original sentencing. At the time of sentencing, the Court adopted the PSR's recommendations and increased Mr. Graham's offense level by two levels for obstruction of justice, two levels for possession of a weapon, and two levels for use of a minor.

In all, a total of six offense levels were added for the three matters identified by the Government, increasing the applicable Guidelines range from 57-71 months to 108-135 months and effectively doubling Mr. Graham's sentence. There can thus be no question that these factors were fully addressed in Mr. Graham's original offense level, and in his original sentence

of 120 months.[3]

The Government next points to the fact that Mr. Graham has been the subject of a single disciplinary proceeding while incarcerated. There is no allegation that Mr. Graham was violent, or that he faced any serious discipline for the incident. While no violation of prison rules is permissible, a single outburst, nearly three years ago, in which the frustration of coping with the realities of prison life could not be contained, is hardly grounds for denying Mr. Graham the relief for which he would otherwise be eligible.

If the Bureau of Prisons feels that Mr. Graham's behavior while incarcerated has been unacceptable, it will surely deny him "good time" credit; thus, this issue, too, is already accounted for in other ways, and should not weigh in the Court's consideration of this motion.

Furthermore, this single instance of insubordination is far outweighed by the positive steps Mr. Graham has taken while incarcerated. He has completed his GED, as well as classes in French, Spanish, health education, anger management, and most recently, business. See Attachment A. In the past three years, he has ordered and studied dozens of books on economic development, the stock market, the civil rights movement, modern political theory, real estate, franchising, entrepeneurship, intellectual property, and other diverse issues.[4] His writing skills are impressive, and it appears that he has used his time in prison productively.

Mr. Graham's mother, Yvonne Moore, offers another countervailing factor in favor of granting Mr. Graham the full proportional reduction for which he is eligible under the amendment. Mr. Graham will reside with Ms. Moore when he is released. Ms. Moore is

---

[3] It is also relevant that the conduct cited by the Government took place nearly a decade ago; while it is now a part of Mr. Graham's history, it is by no means clear that such behavior is consistent with Mr. Graham's current character.

[4] Counsel has copies of receipts for the orders of many of these books, and can provide them to the Court upon request.

disabled due to a fall she suffered on the job in 1998; she has had 4 knee surgeries, multiple shoulder injuries, 3 dislocated discs in her back, and is currently awaiting further surgery on her left ankle and knee.  She is currently on medical leave from her position at AT&T where she has worked for 27 years.  When Mr. Graham is released, he will be able to assist his mother.  He will also be able to assist his sister, Carolyn, a single mother of two young children who is on disability herself.

Finally, after his term of incarceration is complete, Mr. Graham will be subject to five years of supervised release.  He is fully aware of the serious consequences that will result if he violates the conditions of his release.  This Court need not detain Mr. Graham in prison any longer than necessary under the amended guidelines in order to effectuate the purposes of a sentence; the period of supervision and the threat of re-incarceration will continue to satisfy the needs for specific deterrence, protection of the public, and just punishment.

## CONCLUSION

The Western District of Virginia, in holding that a defendant should receive a reduction in his sentence proportional to his original sentence, summarized the core basis for its decision succinctly and eloquently:

> The Sentencing Commission amended the sentencing guidelines to correct what many have perceived as gross inequities between sentences for crack cocaine offenses and sentences for powder cocaine offenses.  The Commission, with widespread support in the judiciary, made the amendments retroactive.  This defendant, like 19,500 similarly situated inmates across the nation, is not the undeserving recipient of blind fortune.  His sentence is being reduced because in the judgment of the Commission, the judiciary, Congress, and much of America-with whom I heartily concur – his original sentence was unfairly harsh when compared to sentences given to defendants for powder cocaine offenses.  In truth, his reduced sentence continues to reflect the disparity between the punishments for powder cocaine and crack cocaine

Ayala, 2008 WL 555525 at *3.

For the reasons set forth above, the defendant, Damon Graham, respectfully urges the

Court to issue an amended judgment reducing his sentence in accordance with the amended guidelines applicable to crack cocaine cases from 120 months to 96 months.

Respectfully submitted,

The Defendant,
Damon Graham

Thomas G. Dennis
Federal Defender

Dated: March 26, 2008

/s/
Sarah A. L. Merriam
Assistant Federal Defender
265 Church Street, Suite 702
New Haven, CT   06510
Bar No. ct25379
Phone: 203-498-4200
Fax: 203-498-4207
Email: sarah_merriam@fd.org

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 26, 2008, a copy of the foregoing motion was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/
Sarah A. L. Merriam